## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KENNETH PATRICK, Individually and on )
Behalf of All Others Similarly Situated, )
)
        Plaintiff, )
) Case No. CIV- 18-1063-G
    v. )
) **CLASS ACTION COMPLAINT FOR**
SONIC CORP., STEVEN A. DAVIS, S. ) **VIOLATIONS OF SECTIONS 14(a) AND**
KIRK KINSELL, KATE S. LAVELLE, ) **20(a) OF THE SECURITIES**
TONY D. BARTEL, R. NEAL BLACK, ) **EXCHANGE ACT OF 1934**
LAUREN R. HOBART, J. CLIFFORD )
HUDSON, FEDERICO F. PEÑA, ) **JURY TRIAL DEMANDED**
JEFFREY H. SCHUTZ, KATHRYN L. )
TAYLOR, and SUSAN E. THRONSON, )
)
        Defendants. )
)
)

Plaintiff Kenneth Patrick ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.    This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Sonic Corp. ("Sonic" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Sonic, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed acquisition (the "Proposed Transaction") of Sonic by Inspire Brands, Inc.

2.     On September 24, 2018, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which Sonic's stockholders will receive $43.50 in cash for each share of Sonic common stock they hold (the "Merger Consideration").

3.     On October 22, 2018, in order to convince Sonic shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Proxy false and/or misleading.

5.     In particular, the Proxy contains materially incomplete and misleading information concerning the financial projections for the Company, which were developed by the Company's management and utilized by the Company's financial advisor, Guggenheim Securities, LLC ("Guggenheim") in rendering its fairness opinion, both of which were relied upon by the Board in recommending shareholders vote in favor of the Proposed Transaction. Additionally, the Proxy contains materially incomplete and misleading information regarding the sale process leading up to the Proposed Transaction.

6.     It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for contraventions of: (i) Rule 14a-9; and (ii) Regulation G, 17 C.F.R. § 244.100, in

violation of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, the material information discussed below is disclosed to Sonic shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Sonic is incorporated in this District.

## PARTIES

11.    Plaintiff is, and at all relevant times has been, a Sonic shareholder.

12.    Defendant Sonic is a Delaware corporation and maintains its principal executive offices at 300 Johnny Bench Drive, Oklahoma City, Oklahoma 73104.  Sonic's common stock is traded on the NASDAQ GS under the ticker symbol "SONC."

13.     Individual Defendant Steven A. Davis has been a director of the Company since January 2017.

14.     Individual Defendant Kate S. Lavelle has been a director of the Company since 2012.

15.     Individual Defendant S. Kirk Kinsell has been a director of the Company since January 2018.

16.     Individual Defendant Tony D. Bartel has been a director of the Company since 2014.

17.     Individual Defendant R. Neal Black has been a director of the Company since 2016.

18.     Individual Defendant Lauren R. Hobart has been a director of the Company since 2014.

19.     Individual Defendant J. Clifford Hudson has been a director of the Company since 1993, chief executive office since 1995, and Chairman of the Board since 2000.

20.     Individual Defendant Federico F. Peña has been a director of the Company since 2001.

21.     Individual Defendant Jeffrey H. Schutz has been a director of the Company since 2010.

22.     Individual Defendant Kathryn L. Taylor has been a director of the Company since 2010.

23.     Individual Defendant Susan E. Thronson has been a director of the Company since 2015.

24.     The Individual Defendants and Sonic may collectively be referred to as "Defendants."  Each of the Individual Defendants herein is sued individually as well as in his or

her capacity as an officer and/or trustee of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Sonic (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

26.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of October 12, 2018, there were approximately 35,687,663 shares of Sonic common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of Sonic will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants disclosed material information that includes non-GAAP financial measures without a presentation and reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

iii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

27.    Sonic franchises and operates a chain of drive-in restaurants, which serve hamburgers, sandwiches, and other signature items, principally in the south central and southeastern United States.

28.    On September 25, 2018, the Company announced the Proposed Transaction in a press release which states, in pertinent part:

**Oklahoma City and Atlanta – September 25, 2018** – Sonic Corp. ("Sonic") (NASDAQ: SONC) and Inspire Brands, Inc. ("Inspire") today announced that they have entered into a definitive merger agreement under which Inspire will acquire Sonic for $43.50 per share in cash in a transaction valued at approximately $2.3 billion including the assumption of Sonic's net debt.

Inspire is a multi-brand restaurant company whose portfolio includes more than 4,700 Arby's, Buffalo Wild Wings, and Rusty Taco locations worldwide. Following the completion of the transaction, Sonic will be a privately-held subsidiary of Inspire and will continue to be operated as an independent brand.

The agreement, which has been unanimously approved by Sonic's Board of Directors, represents a premium of approximately 19% per share to Sonic's closing stock price on September 24, 2018 and a premium of approximately 21% to Sonic's 30-day volume-weighted average price.

"Sonic is a highly differentiated brand and is an ideal fit for the Inspire family," said Paul Brown, Chief Executive Officer of Inspire Brands. "We have tremendous respect for Sonic's exceptional team of employees and franchise owners, who have built one of the industry's most distinctive restaurant brands."

"We're excited to build on Sonic's momentum as we leverage our combined expertise and capabilities to better serve guests, further support team members and franchisees and drive long-term growth."

"This value-maximizing transaction validates the actions we have taken over the last year to grow traffic and improve sales while delivering differentiated offerings and superior guest service," said Cliff Hudson, Sonic Corp. CEO. "Our Board of Directors, taking into account the views of shareholders, conducted a comprehensive review of a wide range of strategic options to maximize shareholder value. This transaction delivers significant, immediate and certain value to Sonic shareholders, and the private ownership structure will provide important benefits to our guests, franchisees and employees.

"As one of the largest owner-operators of company-owned and franchised restaurant brands, Inspire appreciates the unique culture of collaboration between Sonic and our franchisees. Sonic franchisees are engaged in planning regarding technology, new products and marketing programs, and the team at Inspire recognizes the central role our franchisees have played, and will continue to play, in Sonic's success. We look forward to working closely with Inspire as we continue to provide made-to-order American classics, distinctive flavors and the most personalized guest experience in our industry."

29.    The Merger Consideration appears inadequate in light of the Company's recent financial performance. Indeed, the Company has reported positive earnings per share (EPS) growth since 2014. Moreover, the Company's momentum appears likely to continue into the foreseeable future, having reported double digit Net Income and EPS growth for the past two fiscal quarters.

30.    In sum, it appears that Sonic is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

**The Materially Incomplete and Misleading Proxy**

31.    On October 22, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits both required and material information that is necessary for the Company's

shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### The Materiality of Financial Projections

32.     A company's financial projections are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the financial forecasts were relied on to approve the Merger Agreement and recommend the Proposed Transaction to shareholders as the Proxy discloses that the financial projections were prepared by the Company's management and provided "to its board of directors and to Guggenheim Securities for its use and reliance in connection with its financial analyses and opinion . . . ."  Proxy at 57.

33.     When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.  In regards to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K.  *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

34.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format."  17 C.F.R. § 229.10(b).  Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items."  *Id.*

35.    In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*
>
> (ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

36.    Here, Sonic's shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering in making its recommendation that shareholders vote in favor of the Proposed Transaction, the Board believed the Proposed Transaction was more favorable to:

> *Potential Alternatives*: Possible alternatives to the acquisition by Inspire, including certain strategic alternatives and continuing to operate as an independent company.

Proxy at 44.

37.    As discussed further below, the financial projections here do not provide Sonic's shareholders with a materially complete understanding of the assumptions and key factors considered in developing the financial projections.

### The Financial Projections are Materially Incomplete

38.    The Proxy discloses two sets of financial projections for the years 2018-2023 for the Company on page 59.  However, the Proxy fails to provide material information concerning the projections, which were developed by the Company's management and relied upon in recommending that shareholders vote in favor of the Proposed Transaction.

39.    The Proxy provides, *inter alia*, values for non-GAAP measures Company Operated 4-Wall EBITDA and Adjusted EBITDA, Proxy at 59, but fails to provide the line items used in their respective calculation or a reconciliation of these non-GAAP measures to their respective most comparable GAAP measures.

40.    The Proxy does not even define Company Operated 4-Wall EBITDA, let alone provide the line items used in its calculation or a reconciliation to its most comparable GAAP measure.  *Id.*

41.    In regards to Adjusted EBITDA, the Proxy merely states "Adjusted EBITDA includes add back of certain non-cash and one time charges."  *Id.*  This inadequate and misleading description of Adjusted EBITDA is further exacerbated by the failure to disclose the line items used in its calculation or a reconciliation to its most comparable GAAP measure.

42.    Compounding on the materially misleading nature of the omitted information above is the Proxy's reference to "after-tax unlevered free cash flows" ("UFCF"), which was utilized by Guggenheim in its discounted cash flow analysis ("DFC").  Proxy at 52.  Despite the fact that these projections were based upon "the five-year financial projections for Sonic as provided and approved for Guggenheim Securities' use by Sonic's senior management and the Sonic board of directors[,]" *id.*, the Proxy fails to define UFCF or provide the actual UFCF projections.  Moreover,

the Proxy fails to provide the line items used to calculate UFCF or a reconciliation of UFCF to its most comparable GAAP measure.

43.     Despite acknowledging that "[n]on-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Sonic may not be comparable to similarly titled amounts used by other companies[,]" Proxy at 58-59, the Proxy provides an incomplete and materially misleading understanding of the Company's future financial prospects and the inputs and assumptions for which those prospects are based upon.

44.     As a result of the Company's incomplete disclosures surrounding the calculation of the above referenced financial metrics, the Proxy is materially misleading as shareholders are provided an incomplete and materially misleading understanding of the Company's future prospects.

45.     As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

### The Financial Projections Violate Regulation G

46.     The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial

---

[1]     Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure. 17 C.F.R. § 244.101(a)(1).

[2]     Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

measures."[3]  More specifically, the company must disclose the most directly comparable GAAP

financial measure <u>and</u> a reconciliation (by schedule or other clearly understandable method) of the

differences between the non-GAAP financial measure disclosed or released with the most

comparable financial measure or measures calculated and presented in accordance with GAAP.

17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . .

to better evaluate the non-GAAP financial measures . . . . [and] more accurately evaluate

companies' securities and, in turn, result in a more accurate pricing of securities."[4]

47.    Moreover, the SEC has publicly stated that the use of non-GAAP financial

measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the

frequent use by publicly traded companies of unique company-specific non-GAAP financial

measures (as Sonic included in the Proxy here), implicates the centerpiece of the SEC's disclosures

regime:

> In too many cases, the non-GAAP information, which is meant to supplement the
> GAAP information, has become the key message to investors, crowding out and
> effectively supplanting the GAAP presentation.   Jim Schnurr, our Chief
> Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation
> Finance and I, along with other members of the staff, have spoken out frequently
> about our concerns to raise the awareness of boards, management and investors.
> And last month, the staff issued guidance addressing a number of troublesome
> practices *which can make non-GAAP disclosures misleading*: the lack of equal or
> greater prominence for GAAP measures; exclusion of normal, recurring cash

---

[3]    United States Securities and Exchange Commission, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (2002), *available at* https://www.sec.gov/rules/final/33-8176.htm (last visited October 25, 2018) ("SEC, *Final Rule*").

[4]    SEC, *Final Rule.*

[5]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited October 25, 2018); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited October 25, 2018).

operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

48.    Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a).  Thus, in order to bring the Proxy into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

### *The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9*

49.    In addition to the Proxy's violation of Regulation G, the lack of reconciliation, or at the very least, the line items utilized in calculating the non-GAAP measures renders the financial projections disclosed materially misleading as shareholders are unable to understand the differences between the non-GAAP measures and their respective most comparable GAAP financial measures.

50.    Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.  Indeed, Defendants acknowledge the misleading nature of non-GAAP projections, as Sonic shareholders are cautioned that "[n]on-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Sonic may not be comparable to similarly titled amounts used by other companies."  Proxy at 58-59.

---

[6]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted) (last visited October 25, 2018).

51.    As such, in order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 59, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

52.    In sum, the Proxy independently violates: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction from Sonic shareholders.

53.    Absent disclosure of the foregoing material information prior to the special shareholder meeting, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

54.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any [Proxy] or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

56.    As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

57.    The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

58.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.    SEC Rule 14a-9 prohibits the solicitation of shareholder votes in Proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]"  17 C.F.R. § 240.14a-9(a).

60.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

61.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

62.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

63.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

64.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

65.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a Proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

66.     Sonic is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

67.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

68.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

69.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

70.     The Individual Defendants acted as controlling persons of Sonic within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Sonic, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

71.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing the Proxy.

73.     In addition, as described herein and set forth at length in the Proxy, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

74.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

76.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.    Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  October 29, 2018

Respectfully submitted,

**JONES GOTCHER**
*/s/ Jack L. Brown*

**OF COUNSEL:**

C. Michael Copeland, OBA # 13261
Jack L. Brown, OBA # 10742
3800 First Place Tower
15 East Fifth Street
Tulsa, OK 74103-4309
Telephone: (918) 581-8200
Email: mcopeland@jonesgotcher.com
Email: jbrown@jonesgotcher.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*